UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRISHON BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:09-cv-01237-WTL-MJD |
| | ) |
| THE STATE OF INDIANA, | ) |
| MITCHELL E. DANIELS, JR., | ) |
| Governor, THE INDIANA | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| J. DAVID DONAHUE, | ) |
| Commissioner, MARK R. SEVIER, | ) |
| Superintendent, Miami Correctional | ) |
| Facility. | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendants' motion for summary judgment. The motion is fully briefed and the Court, being duly advised, **GRANTS** the Defendants' motion to the extent and for the reasons set forth below.

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual

allegations, that there is a genuine issue of material fact that requires trial." *Id.*

## Factual Background

The relevant facts of record, viewed in the light most favorable to the Plaintiff, who is the non-moving party, are as follow.

Bond began his incarceration at the Miami Correctional Facility ("MCF") in 2001 where he developed a stomach ulcer. Prior to October 2007, Bond's ulcer required medical treatment at both Dukes Memorial Hospital in Peru, Indiana, as well as Wishard Hospital ("Wishard") in Indianapolis, Indiana, due to the ulcer being beyond what the medical staff at MCF could treat. Both times, Bond was referred to a gastroenterologist specialist; however, upon his return to MCF, the Defendants refused to allow Bond the opportunity to see the specialists.

In October 2007, Bond began experiencing severe pain in his abdomen and requested assistance from the medical staff. After receiving milk of magnesia, Bond returned to his cell where his condition deteriorated for the next several hours. The following morning, officers ordered Bond to go to breakfast. When he was unable to do so, the officers placed Bond inside a blanket and swung him back into his cell. Eventually, his cellmate found him vomiting and unresponsive and Bond was transferred to Wishard, where he remained for treatment for five days.

Upon his return to MCF, Bond was placed in segregation for three and a half weeks, purportedly due to overcrowding. Over a year later, Bond discovered from two staff members at MCF that there had been no overcrowding problem. The staff members informed him that he was placed in segregation in order to monitor his correspondence with his family to see if he intended to pursue a lawsuit regarding the treatment he received in October 2007. Upon

receiving this information, Bond filed a grievance with MCF in February 2009 complaining of improper medical treatment and abuse. Bond requested the following relief: proper medical treatment; acknowledgment that the reason he was given for being placed in segregation was false; discipline of the relevant staff members; and monetary compensation.

The Indiana Department of Correction Offender Grievance Program Return of Grievance Form (State Form #45475) lists fourteen reasons why a prisoner's grievance may be returned. Bond's original grievance was returned for several reasons: (1) Bond had not first attempted to resolve his grievance informally with the medical staff as required by the Offender Grievance Process ("OGP"); (2) the relief sought was not a function of the OGP; and (3) Bond needed to explain why he was filing the grievance so late. After attempting to speak with the medical staff regarding an informal resolution, Bond filed a second grievance in which he provided the following additional information: (1) "I sent a request form to Ms. Cummings in the medical department . . . I did not receive a response from her"; and (2) "Based on the advice of legal counsel, at this stage of the process I will not reveal the names of the staff members that gave me this information."

Bond's second grievance was returned because (1) he didn't provide the response he received from the medical staff; (2) the relief he sought was not a function of the OGP; and (3) he needed to answer the following questions: "Who were the staff that gave you this information? When were you provided with this information"? Bond filed one more grievance with the following additional information: (1) "I attempted to speak with the staff in medical via a pink request slip and a medical request form. Neither were responded to"; (2) "Much of what I spoke about was just told to me (by staff members) three days before I filed the grievance.

Obviously I could not grieve those issues that I did not know about. Certainly, under special circumstances the time frame can be waived"; and (3) "If as you say the grievance process cannot provide relief . . . then to whom do I turn"?

The boxes checked on Bond's third grievance indicate that it was returned for two reasons: (1) "This grievance is a request for reimbursement or replacement of personal property that has been lost, damaged, or destroyed. This claim is handled through the Tort Claim process, Policy 00-01-104. See the Law Library"; and (2) "The relief you are seeking is not a function of the grievance process. Compensation is a function of the tort claim process." Bond did not pursue the grievance process any further, but instead filed this action.

## Discussion

Bond brings this action pursuant to 42 U.S.C. § 1983, asserting that the Defendants' actions constitute a willful and knowing violation and deprivation of his rights secured by the Constitution of the United States. The Defendants move for summary judgment claiming Bond did not properly exhaust his administrative remedies before filing suit by not timely filing his grievance and not timely correcting it. Bond contends he did timely revise his grievance and respond to the Defendants' requests for additional information and further argues that the Defendants should be estopped from asserting their exhaustion of remedies defense.

### The Timeliness of Bond's Grievances

Section 1997(e) of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). In order for a prisoner to have

4

exhausted his administrative remedies, he "must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). It has been established that if a prison has an internal process in place to resolve problems, prisoners need to utilize that process before filing a lawsuit. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

MCF has a three-step OGP for prisoners explained in the Manual of Policies and Procedures to remedy their complaints: (1) informal resolution, (2) formal grievance process, and (3) appeals to grievance responses. Exhibit D - Grievance Policy pp. 13-22. Each of these steps have certain time restrictions that a prisoner must follow. *Id*. at 22. Prisoners are to informally discuss their grievance with the appropriate staff member within five working days of the incident. *Id*. If the prisoner is unable to resolve the grievance informally, he has twenty days to file a formal written grievance. *Id*. at 24. If for any reason the formal grievance is returned for revision, the prisoner has five working days to correct and return it. *Id*.

It is undisputed that Bond filed his first formal grievance on February 12, 2009, well past the twenty-day time requirement. Bond Affidavit ¶ 24. The OGP, however, states that the Facility Head may waive the time frame if there is a valid reason for doing so. Exh. D at 14. It appears that one reason Bond's first grievance was returned was because of this delay; the response asked "if the incident occurred in October 2007, why are you filing a grievance so late"? Exhibit A - Pl.'s first returned grievance. Bond responded by stating,

> I am aware of concerns about time limitations. However a number of these issues were intentionally kept from me and it was only in the last few days that I was made aware. In addition grievance time limitations can be lifted under special circumstances. If any situation qualifies as "special" I think this one does.

5

*Id*. His next two grievances were not returned for any reason involving time; in fact, his third grievance was returned indicating no deficiencies remained, only that the OGP was not the correct vehicle for Bond's complaint. Exh. C. This indicates that the prison considered this a special circumstance and waived the twenty-day requirement for Bond's grievance.

The next timing issue the Defendants raise is the five-day requirement to revise the grievance. The bottom of the Return of Grievance form states, "[i]f you wish to proceed with this grievance, you have five (5) working days from the date of response to return the corrected grievance to the Executive Assistant." Exh. A, B, C. Bond's first grievance was returned on February 20; however, he did not return the grievance with corrections until March 4. Exh. A, B. As the Defendants point out, this is an untimely response. Def.'s Reply pp. 3. However, once again, the second and third grievance Bond received made no further mention of untimeliness. Exh. B, C. This indicates that the prison also chose to waive this time requirement by not rejecting his grievance due to an untimely revision.

Inasmuch as untimeliness was not one of the reasons given for the ultimate rejection of Bond's grievance, the Court finds that untimeliness is not a basis for finding that Bond failed to exhaust his administrative remedies.

### Bond Failed to Pursue His Grievance to the Final Step

In addition to their untimeliness argument, the Defendants further assert that Bond failed to pursue his grievance to the final step of the OGP. Specifically, Bond failed to appeal his third returned grievance before filing a lawsuit as required in the OGP. Exh. D pp. 19. In response, Bond argues the Defendants should be barred from raising the exhaustion of remedies defense using the theory of promissory estoppel. Bond argues that Defendants cannot claim he did not exhaust his administrative remedies by failing to take his grievance through the last step in the

6

OGP because they told him his grievance could not be remedied through that process.

The Defendants are correct in asserting that a promissory estoppel argument is not applicable to this case. Promissory estoppel is "an equitable contract remedy that permits enforcement of a promise that induces actual and reasonable reliance on the part of the plaintiff." *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 595 (7th Cir. 2008). The Defendants did not promise Bond anything in his last grievance, and as such, the theory of promissory estoppel does not apply. The third and final grievance Bond filed was returned stating (1) "This grievance is a request for reimbursement or replacement of personal property that has been lost, damaged, or destroyed. This claim is handled through the Tort Claim process"; and (2) "The relief you are seeking is not a function of the grievance process. Compensation is a function of the tort claim process." Exh. C. Neither of these reasons for the return is a promise, a needed component for promissory estoppel.

Essentially, Bond is raising a futility argument, claiming that since the Defendants told him his grievance could not be remedied through the OGP, it would be pointless for him to appeal the response he received from his third grievance because, presumably, the response would be the same. This argument, however, has been rejected. Even if the type of relief a prisoner seeks cannot be awarded in the grievance process, a prisoner is still required to complete the process before his administrative remedies can be exhausted. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). It is not considered futile for a prisoner to go through all the steps even if the requested relief cannot be awarded because "an administrative claim may help to narrow a dispute or avoid the need for litigation." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). Bond acknowledged this in the additional information to his grievance by stating, "even if the type of relief I am seeking cannot be granted via a grievance,

7

this is a mandatory step that I am required to take if these issues are to be put in front of a judge (lawsuit) and prosecutor (charges)." Exh. C. The final mandatory step Bond was required to complete before filing a lawsuit was an appeal of his third grievance.

If a prisoner fails to file a timely appeal as required by the prison system, that prisoner has failed to exhaust his administrative remedies. *Burrell v. Powers*, 431 F.3d 282, 284-285 (7th Cir. 2005). The Court finds that Bond failed to exhaust his administrative remedies before filing his lawsuit by not filing an appeal as required in the OGP. Accordingly, the Defendants are entitled to summary judgment on Bond's § 1983 claim against them.

## Conclusion

For the reasons set forth above, the Defendants' motion for summary judgment is **GRANTED**.

SO ORDERED: 06/08/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification